Good morning. May it please the court. My name is David Gibson. I'm the attorney for the appellant. And what I think we have in this case is we have the credibility analysis of a foreign witness and the witness is a young man. He's 30 years old. He's a rural fellow from China. He has a very low education. He's about a junior high school level education in China. He lives with his parents. He gets his girlfriend pregnant when she's still 19. And so I think in the context of the analysis, you really need to look at the witness and who we're talking about, because we have different expectations from different witnesses. And when you have someone who's what's your best case? What's your best case for that argument? I mean, my worry about this is that this is a credibility case. It's a credibility case where counsel, you have the burden. Your client has the burden to prove that the person was credible. And on the other hand, the BIA determines that your client was not credible. And when I look at that, I have to review that on substantial evidence review. And it was absolutely true that your client did not give his occupation assets and that he didn't have hepatitis B. He falsely testified, falsely gave that on his visa application. He admitted that it was false. He was confronted. And he failed to provide a reasonable expectation. All he said was he and his wife were fleeing from China because of the population control policies. And he didn't even give any evidence about that. So it's hard for me on substantial evidence to review to go overcome this false visa application. But your honor, it shouldn't be fatal. You have to look at. You need to be so strong to overcome the determination. So let's look at the evidence and see if it's overcome. What about the return to China? Well, that wasn't a voluntary return. I would argue that that was coerced. He went to Peru. He was there for three months. And after that, he returned. We have cases that says the fact that he returns to his home country undermines the assertion that he fears persecution. Well, I don't think it does, your honor. It wasn't a voluntary return. Well, that's the case law. That's the case law. I'm not citing this Jai Cui case because I necessarily say it's my case. I have to follow it. I think it's an indignant case. He didn't seek asylum in Peru and he was there for three months. But he was coerced to leave. On his way to Mexico. He had a valid reason to be there. He didn't do anything about that and he stayed for a day. All of that seems to sustain the credibility determination. That's all I'm trying to say on a substantial evidence review. Yes, your honor. I respectfully disagree. I think the visa fraud was very minor. It wasn't like he used a face name. You can say it was minor, but when you go through as to exactly what he did and that he admitted he did it, minor is an argument you can make. But I'm on substantial evidence review. So then I'm saying, okay, I can say that's enough or I can say, guess what? Just because he's using it to gain a benefit, then I've got to find out if his other evidence is strong. So then I returned to look to this return to China. That's a pretty big deal. He could have done all of that and he didn't. But the visa fraud was minor, your honor. He was intending to give truthful information. Then when he met the visa agent on the street right before the visa interview, the visa agent provided him with this false information, scolded him that he needed to submit it. And so he did. And then the visa got denied. But that's your argument. That's your argument. But when I'm reviewing this, I can't take one side or the other on substantial evidence review. I've got to say, is there something that I can show that there was false? He admits it's false. Mr. Gibson, I think that goes to his credibility. And then he was confronted. And his only idea about confronting was there were population controls policies that doesn't have anything to do with it. And he didn't say anything about it. But he did say, your honor, he had this aunt with five children who had gone to Honolulu and had gotten asylum. And that's what was in his mind. This is a young man who had had this problem after he had his first daughter. He has the rural household register. So he's got to wait to have a second child. But he doesn't want to report that he had his first child because he's going to have to have an IUD. He's going to have to have exams. His wife is going to and he's not even married. And so that makes sense that he'd want to escape. And he applied for the visa about the same time. And he had this aunt who was going through this, who had five children. So this all makes sense that this man would try for this visa. It failed. Mr. Gibson, suppose that for some of the reasons identified by Judge Smith, we were to conclude that the adverse credibility finding is supported by substantial evidence. If we were to say that, can you address, you submitted some other evidence, some letters and other corroborating evidence. How should we evaluate the board's decision in light of those if we uphold the adverse credibility finding? Well, I think that the supporting letters and the other evidence were substantial. The judge seemed to want them to contain additional information based on her knowledge. But the letter said what they said. And then there were some witnesses who were in Honolulu, but they weren't recipient witnesses. They were family members. And they weren't called to testify because it wouldn't give any weight to the case. The judge knows that the family members are going to support the family. And so it just wouldn't have any weight to add to the case. Is it your view that the letters that were submitted are sufficient to establish a claim of persecution if your client's testimony is not deemed credible? Yes, Your Honor. Can you elaborate on why that is in your view? Well, I think he had letters from fellow church members in China that confirmed everything that happened. And the immigration judge, she made this comment like they didn't say that they were also getting extorted because the respondent, the appellant was getting extorted. His case was not over. He had been arrested and released, but it wasn't finished. The police were extorting him for more money. And the fact that he left right away, I think that goes to his credibility that he really was in fear. He left his pregnant wife. He went off to Peru, of all places, where he didn't have a job. He didn't have what he needed to survive, and he was forced to come back. Let me talk to counsel. I looked at the same issue that you're now being placed argument about. Could we get some evidence out? If you find he's adversely, that he has an adverse credibility finding, can he come up with some evidence that will offset that finding with corroborating evidence? I couldn't find a case which would say that the corroborating evidence would offset that determination. In fact, I found a case, and I don't say it very well because I'm from Idaho and don't say these very well at all. Mukulambu 2. That case says, evidence provided in a case is entitled to limited weight because the affidavit and letters are provided for interested parties. Now, it seems to me that that's exactly what the IJ and the BIA were saying here about this evidence. It's just limited weight because they weren't subject to cross-exam. They were making it for an interested party, and therefore, we're not going to give it that weight. So it seems to me that this Mukulambu 2 controls what I even do with regard to that evidence. If you can give me something different, I'm glad to have you do it. Yes, thank you, Your Honor. All right. What about this idea that Lee says he couldn't afford a doctor, and then the IJ and the BIA say, but you can afford a ticket to Peru? So that doesn't seem logical. That doesn't seem plausible. It doesn't seem like it's anywhere near. I would respectfully disagree, sir. Well, you can disagree, but, again, I'm talking about substantial evidence review, and I'm saying to the judge, I don't know that I agree with it, but it certainly seems implausible that you cannot afford to go to a doctor, but you can go to Peru. Well, it wasn't a choice of one or the other. He had some limited injuries. He didn't have any broken bones. He didn't have anything bleeding. So that was why he didn't go to the doctor, but then he needed to get out of China. His family borrowed money to get him that money so that he could leave the country, and he was a poor guy. He never had much money. His family didn't have money, but they borrowed money so that he could leave the country, and so I don't think that's inconsistent with not being able to go to a doctor. Thank you, Mr. Gibson. We've taken you past your time, but we will give you two minutes for rebuttal. Thank you. And we'll hear from the government. Mr. Spurlock? Good morning. May it please the Court, Matthew Spurlock on behalf of the United States. Before I get into discussion about the adverse credibility, I just wanted to address one thing that Judge Miller had mentioned. In the Board's decision, they specifically found that the petitioner had waived before the Board, the IJ's finding that notwithstanding the adverse credibility determination, the immigration judge had found that even if he was assumed to be Lutheran and was assumed to be Christian, as he had claimed, he didn't meet his burden to show objectively reasonable evidence that he had a well-founded fear of persecution in China based on his religion. Does the Board consider the corroborating documentary evidence? Did they consider that in that? Yeah, I believe they did, but they also considered country conditions evidence. So they affirmed the adverse credibility determination. It's in the footnote on, I believe it's page four of the Board's decision. That's where they're just saying, notwithstanding the adverse credibility determination. Counselor, we have a lot of cases that make it pretty improbable that we're going to affirm this stuff on whether they believe the guy was credible on whether he is religious or not. So I don't think that's your best case. That's why I didn't go into it. I think that's your worst argument. I just mention it because as far as the— That's why I went into other arguments that I thought were your better arguments. If you want to make that argument, go ahead. But we got a lot of cases about that kind of an argument. Exactly, exactly. The only reason why I bring that up, and I can certainly get into the adverse credibility and the substantial evidence that supports the adverse credibility determination, but I just wanted to point out that even if you don't consider the adverse credibility determination, he waived the issue of whether he had a well-founded fear of persecution in China based on other aspects of the evidence. I think he did that. Thank you. And the waiver determination, as I'm looking at, I guess it's AR5 or page 3 of the board's order, this is the statement, as he has not contested the other reasons for denying his applications, relief, is in the last paragraph before it says order. Is that what you're referring to for the waiver? Exactly. And you view that as encompassing the ‑‑ because I was unable to find, with respect to the IJ, whether exactly on which basis or whether the IJ discounted the corroborating evidence or just didn't find that persuasive because of the structure of it. So with respect to the board, it doesn't really seem to be speaking to that either way. I think all they're saying is there's other evidence in the record that they consider that had to do with the country conditions, those sorts of things, what he expressed that he ‑‑ other reasons why he didn't want to go back. He never contested any of those findings by the immigration judge. But the corroboration is clearly backed by substantial ‑‑ Immigration judge's corroboration findings and the board's findings are backed by ‑‑ Well, yeah, I guess that's what I just don't ‑‑ I'm having trouble seeing where the board engaged in the IJ's documents. The alternate finding. Are you talking about the alternate finding? I'm just trying to figure out what the board said about the documents. Well, the board upheld all the immigration judge's findings on the documents, period. They specifically go through and do that. And they find that they didn't support ‑‑ they weren't supportive. The petitioner's arguments on appeal weren't supported. So they found that they were ‑‑ they didn't help his case. I guess the one difficulty, perhaps, is that the IJ's discussion of the documents and then the board's discussion in the footnote on the last page of its opinion say that the documents don't corroborate his story of extortion by the police, which is correct. But they do say that he was at ‑‑ they and he were at this small house church gathering and the police came in and arrested people and beat people up. And that was the thing that I had taken to be the core of the religious persecution claim and the extortion was kind of ancillary to that. And so where did the ‑‑ to say that they don't corroborate the extortion seems to kind of maybe miss the point of what they do corroborate. So where did the IJ or the board engage with that? Well, I think what the immigration judge said was it's not so much ‑‑ if he would have had documents submitted from this friend who was aware of the circumstances and also his father, who was very aware of his monetary circumstances because he had been paying a lot of money for him to flee the country and whatnot, they would have been aware of the fact that he was extorted. That would have been part of what they would have known and that would have certainly been something they would have mentioned in those letters. It's reasonable to expect that if he was also being extorted or if the friend had also been extorted, they would have considered that information important as well. Right, but I guess my ‑‑ so maybe he wasn't extorted. But he testified he did. Well, okay, but I guess the premise of this whole line of questioning is maybe we uphold the adverse credibility findings. So we don't believe the stuff that he said. But he has these letters that say that the police came in and broke up this gathering of the church and arrested people and beat people up. And where does the IJ or the board say that that's not sufficient to establish past persecution on the basis of religion? I think if you look at the ‑‑ I want to go back to the father's letter because I think that's probably the more important one because he doesn't mention in that letter that Petitioner had any injuries as a result. I hope you take our point. My point, at least, you can make the arguments in support of the government's position now. I need to see where the agency made that determination in its own words. I believe that's ‑‑ I think that's what the ‑‑ are you talking about the immigration judge specifically or the board? Well, this isn't Burbano, so we're looking at the board. And then we have this footnote. The footnote cites ‑‑ I guess there's a clue that it cites the immigration judge's decision. But take me ‑‑ where should I look to find the agency making that finding rather than your argument that we should take the agency to have made that finding? I'll grab the ‑‑ The board cites the IJ's decision at 15. So he's talking about submitted to passports, implausible. I mean, I think that's what I brought that up for initially, was that he didn't challenge the basis of, even if he accepted all the other facts that he was ‑‑ well, it was a ‑‑ he was credible, it would have been ‑‑ With respect on appeal to the board? Correct. He never challenged those other findings. So I'm thinking he never challenged any of the corroboration issues or any of the other issues. Isn't there, so the final issue on page 12 of the brief, the IJ erred on the conclusion of lacking corroboration. To support his claim, respondent provided evidence, including the notarial certificates of birth, father certification letter, letters. That's not enough to preserve the issue? Well, I think, I don't, I think that in conjunction with other facts that weren't considered by the, by a petitioner in their brief to the board. I think that was what the board was saying, in addition to the corroborating, corroboration issues. And there's plenty of, although it's not a Bourbono case, as you mentioned, they did uphold the adverse credibility finding of the immigration judge. The immigration judge discusses that thoroughly. The corroboration issues. My time's almost up, but back to the adverse credibility finding, there's clearly substantial evidence to support the adverse credibility finding. In particular, the fraudulent documents of both the passports, which are fraudulent, which kind of came about in the immigration. Fraudulent how? I mean, who did, what's the substantial evidence that he knew and intended to falsify the passports? It's not that he knew that he intended, but he was certainly. How can someone else be, commit fraud on his behalf? Is that something we count if we're looking to his credibility? I think, I think you can discount his credibility for it, because he's the one who's hired the smuggling agencies to take care of his, his trip, and it's being paid for by his family, supposedly. If that were enough to support it, that's a quite common practice in cases. I don't recall seeing any authority that that would be substantial evidence. If he's willing to produce a fraudulent passport for an immigration benefit, in that case, supposedly his attorney provided the passport to DHS in order to assist him in providing identification to be released from detention. But the whole time, he had already given the passport to this shadow agency. We don't know who they are. Clearly, he's aware that this whole process is not on the up and up. I mean, that would be common sense that this individual's using fraudulent passports. He agreed with his smuggler agent to also provide fraudulent information for the 2015 visa application as well. That's, and the reason why that's important is because his only excuse for doing that was providing the false information for the visa application was saying, well, because the smuggler told me to do it. But clearly, he knew it was false, and he knew it was, what he was doing was false and wrong, and he went along with the smuggler's plans. Thank you. Mr. Gibson, rebuttal? Well, thank you, Your Honors. I would argue that he didn't use that passport fraudulently. He wasn't aware that it was copied. He wasn't aware that it was submitted on his behalf. It was just a duplicate passport that was made, and so he always had his real passport in his hand, except when he turned it over for a little bit of time to the agency. But he submitted his correct passport. There wasn't anything deceptive in using that copy of the passport, and he didn't use it. He had his own passport, and he never submitted anything fraudulently like that. And just going back to the first... But the fact that he used this passport, or that this was a passport that he was using, isn't that relevant to the extent that they show, as the government has now argued, that he submitted false documents to the government? That he had a lack of care in confirming the accuracy of the documents? And isn't that a part of the totality of the circumstances we're supposed to look at? No, Your Honor, I respectfully disagree. He didn't have anything to do with making that second passport. He wasn't aware of it. He didn't ask somebody to submit it on his behalf, and it wasn't a fake. It wasn't deceptive. It didn't have some other information in it. It was just a duplicate passport that somehow had been created, but it wasn't used deceptively, and he readily admitted it. Everything in this case where he admitted, I think that goes to his credibility, and it helps establish his credibility that he was honest and had these admissions against himself, but they're not so bad that they should disqualify him. Thank you very much. We thank both counsel for their helpful arguments, and the case is submitted. Thank you, Your Honors.
judges: SMITH, MILLER, JOHNSTONE